# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| M.C. PAINTING CORPORTION | § | |
| | § | C.A. No. 1:07-cv-00283-GMS |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CIANBRO CORPORATION, and | § | TRIAL BY JURY |
| TRAVELERS CASUALTY AND SURETY | § | DEMANDED |
| COMPANY OF AMERICA, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| CIANBRO CORPORATION, | § | |
| | § | |
| Counter-Claim Plaintiff, | § | TRIAL BY JURY |
| | § | DEMANDED |
| v. | § | |
| | § | |
| M.C. PAINTING CORPORATION, | § | |
| | § | |
| Counter-Claim Defendant. | § | |

## DEFENDANT CIANBRO'S MOTION TO FILE AN AMENDED COUNTERCLAIM and to FILE AMENDED INITIAL DISCLOSURES

COMES NOW, Defendant Cianbro Corporation ("Cianbro"), by and through

undersigned counsel, pursuant to Fed .R. Civ. P. 15 and D. Del. LR 15.1, with this unopposed

Motion to File an Amended Counter-Claim and to File Amended Initial Disclosures (the

"Motion"), and in support thereof states as follows:

1.       On May 23, 2007, Plaintiff M.C. Painting Corporation ("MC Painting") filed its

Complaint against Cianbro and John Doe Bonding Company alleging contract damages related

to the South Market Street Bridge renovation project (D.I. #1).  On May 31, 2007, the Complaint

ME1 7141231v.1

was amended to substitute Travelers Casualty and Surety Company of America ("Travelers") for John Doe bonding company. (D.I. #3)(hereinafter the "Amended Complaint")

2.     On October 19, 2007, following discussion among counsel appearing for the named parties, Cianbro filed its Answer to Amended Complaint and Counter-Claim of Defendant Cianbro Corporation (the "Answer and Counter-Claim")(D.I. #11)(Exhibit A)(original exhibits omitted).  Travelers also answered the Amended Complaint on that day.

3.     On December 18, 2007, the parties submitted to the Court a Joint Status Report (D.I. #19).  On December 20, 2007, the Court held a scheduling conference and on that day the parties filed with the Court a Proposed Scheduling Order (D.I. #21).  The parties immediately began amicable discovery and have initiated discussions regarding both mediation and settlement.

4.      On January 15, 2008, Cianbro filed its Fed. R. Civ. P. 26 Initial Disclosures ("Initial Disclosure")(D.I. #28)(Exhibit B), which mirrored its Answer and Counter-Claim for damages.

5.     On January 23, 2008, the Court approved the Proposed Scheduling Order.  Shortly thereafter, Cianbro recognized an error in its damages calculation as alleged in the Answer and Counter-Claim, and as detailed in the Initial Disclosure.

6.      Cianbro alleged in the Answer and Counter-Claim damages of $45,221.00 (exclusive of costs, attorneys' fees, and pre/post judgment interest), which was comprised of $32,247.00 associated with monitoring MC Painting's workmanship, and $12,974.00 for alleged over-charges and other costs paid by Cianbro.  Cianbro's calculation unintentionally included as a part of the $12,974.00 damage allegation (rather than as a separate damage item) the $7,545.00 Cianbro paid to purchase a warranty bond for the State of Delaware which Cianbro alleges MC Painting was required to purchase pursuant to the Agreement.  Cianbro's omission misstates its damages allegations by $7,545.00, and now Cianbro seeks leave from this Honorable Court to

amend that damages allegation from $45,221.00 as sated in the Answer and Counter-Claim to $52,766.00 as alleged in its proposed Answer and Amended Counter-Claim.  Cianbro does not seek leave to amend its Answer.

7.      Fed. R. Civ. P. 15 requires that following any responsive pleading "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."

8.      Cianbro respectfully submits that leave to file the Amended Counter-Claim (Ex. C)(with exhibits) is appropriate in this instance where there is no objection by any other party to this suit, the omission was an inadvertent error, and the Amended Counter-Claim does not complicate the proceedings or require an amended scheduling order.  Further, Cianbro respectfully submits that if permitted, the Amended Counter-Claim will require the proposed Amended Initial Disclosure (Ex. D).

WHEREFORE, Cianbro prays that this Honorable Court enter an Order, in the form attached hereto, granting Cianbro's Motion to file both the Amended Counter-Claim and an Amended Initial Disclosure, and thereafter pursuant to D. Del. LR 15.1 direct the Clerk to docket the proposed Amended Counter-Claim and Amended Initial Disclosure.

**McCARTER & ENGLISH, LLP**

/s/ Christopher A. Selzer
Christopher A. Selzer, Esq. (#4305)
405 N. King Street, 8th Floor
Wilmington, DE  19801
(302)-984-6300
(302)-984-6399 facsimile
**Counsel for Defendant**
**Cianbro Corporation**

Date:  February 14, 2008

ME1 7141231v.1

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| M.C. PAINTING CORPORTION | § | C.A. No. 1:07-cv-00283-GMS |
| Plaintiff, | § § | |
| v. | § § | |
| CIANBRO CORPORATION, and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | § § § § | TRIAL BY JURY DEMANDED |
| Defendants. | § § | |
| CIANBRO CORPORATION, | § § § | |
| Counter-Claim Plaintiff, | § § | TRIAL BY JURY DEMANDED |
| v. | § § | |
| M.C. PAINTING CORPORATION, | § § § | |
| Counter-Claim Defendant. | § | |

## ANSWER TO AMENDED COMPLAINT & COUNTER-CLAIM OF DEFENDANT CIANBRO CORPORATION

COMES NOW, Defendant Cianbro Corporation ("Cianbro"), by and through undersigned counsel, with this Answer, affirmative defenses and Counterclaim to Plaintiff's Amended Complaint, and in support thereof states as follows:

*Parties*

1.      Cianbro is without sufficient information to admit or deny the allegations set forth in paragraph 1 of the Amended Complaint.

2.      Denied.  Cianbro is a corporation organized and existing pursuant to the laws of the State

of Maine and that its principle place of business is located in Maine.  All other allegations set

forth in paragraph 2 of the Amended Complaint are specifically Denied.

3.      The allegations in paragraph 3 of the Amended Complaint are not directed toward

Cianbro and thus no response from Cianbro is required.

*Venue and Jurisdiction*

4.      Admitted.

5.      Admitted.

*Factual Background*

6.      Admitted.

7.      Admitted in Part.  Cianbro admits that it was involved as a contractor for the project

related to the South Market Street Draw Bridge Rehabilitation located in Wilmington.  All other

allegations set forth in paragraph 7 of the Amended Complaint are specifically Denied.

8.      Admitted in Part.  Cianbro admits that its involvement required it to secure a bond.  All

other allegations and/or characterizations of that bond are specifically Denied.

9.      Admitted in Part.  Cianbro admits that it secured a bond from defendant Travelers

Casualty and Surety Company of America.  All other allegations and/or characterizations of that

bond are specifically Denied.

10.     Denied.  By way of further response and without waiving such denial Plaintiffs executed

a Cianbro subcontract purchase order which dictates the terms of Plaintiff's performance and

remedies available to Plaintiff.

11.     Denied.

12.     Denied.

13.    Denied.

14.    Denied.

15.    Denied.

16.    Admitted in Part.  Cianbro admits that Plaintiff has demanded payment from Cianbro.

All other allegations and/or characterizations of paragraph 16 of the Amended Complaint are

specifically Denied.

17.    Denied.

## COUNT I--Breach of Contract
## Plaintiff v. Cianbro

18.    Denied.

19.    Denied.

20.    Denied.

21.    Admitted in Part.  Cianbro admits that Plaintiff has demanded payment form Cianbro and

that Cianbro has denied any obligation to Plaintiff.  All other allegations in paragraph of the

Amended Complaint are specifically Denied.

22.    Denied.

WHEREFORE, Cianbro prays that this Honorable Court enter an order, dismissing with

prejudice, Plaintiff's complaint and award costs, attorneys' fees and grant all other relief as may

be equitable and just.

## COUNT II--Unjust Enrichment
## Plaintiff v. Cianbro

23.    Denied.

24.    Denied.

25.    Denied.

26.    Denied.

27.    Denied.

WHEREFORE, Cianbro prays that this Honorable Court enter an order, dismissing with prejudice, Plaintiff's complaint and award costs, attorneys' fees and grant all other relief as may be equitable and just.

### COUNT III--Claim Against Labor and Materialman's Payment Bond/ Breach of Payment Bond (MCP v. Travelers Casualty and Surety Company of America)

28.    Denied.

29.    The allegations in paragraph 29 of the Amended Complaint are not directed toward Cianbro and thus no response from Cianbro is required.  To the extent that paragraph 29 of the Amended Complaint requires a response by Cianbro, all allegations are specifically Denied.

30.    The allegations in paragraph 30 of the Amended Complaint are not directed toward Cianbro and thus no response from Cianbro is required.  To the extent that paragraph 30 of the Amended Complaint requires a response by Cianbro, all allegations are specifically Denied.

31.    The allegations in paragraph 31 of the Amended Complaint are not directed toward Cianbro and thus no response from Cianbro is required.  To the extent that paragraph 31 of the Amended Complaint requires a response by Cianbro, all allegations are specifically Denied.

32.    The allegations in paragraph 32 of the Amended Complaint are not directed toward Cianbro and thus no response from Cianbro is required.  To the extent that paragraph 32 of the Amended Complaint requires a response by Cianbro, all allegations are specifically Denied.

33.    The allegations in paragraph 33 of the Amended Complaint are not directed toward Cianbro and thus no response from Cianbro is required.  To the extent that paragraph 33 of the Amended Complaint requires a response by Cianbro, all allegations are specifically Denied.

ME1 6840418v.1

WHEREFORE, Cianbro prays that this Honorable Court enter an order, dismissing with prejudice, Plaintiff's complaint and award costs, attorneys' fees and grant all other relief as may be equitable and just.

## AFFIRMATIVE DEFENSES
## OF DEFENDANT CIANBRO

FIRST, affirmative defense.  Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted.

SECOND, affirmative defense.  Plaintiff is in breach of contract by failing to secure the contractually required worksmanship and warranty bond and approaches the Court for relief with unclean hands.

ME1 6840418v.1

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| M.C. PAINTING CORPORTION | § | C.A. No. 1:07-cv-00283-GMS |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CIANBRO CORPORATION, and | § | TRIAL BY JURY |
| TRAVELERS CASUALTY AND SURETY | § | DEMANDED |
| COMPANY OF AMERICA, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| CIANBRO CORPORATION, | § | |
| | § | |
| Counter-Claim Plaintiff, | § | TRIAL BY JURY |
| | § | DEMANDED |
| v. | § | |
| | § | |
| M.C. PAINTING CORPORATION, | § | |
| | § | |
| Counter-Claim Defendant. | § | |

## COUNTER-CLAIM of CIANBRO

1.      Counter-Claim Plaintiff Cianbro Corporation ("Cianbro"), without admission or

contradiction to its Answer to the Amended Complaint, and subject to the qualifications in

Cianbro's Answer thereto adopts for purposes of this Counter-Claim certain of the terms and

facts regarding the existence of an agreement between the parties as set forth in the Amended

Complaint.

2.      Cianbro engaged Counter-Claim Defendant M.C. Painting Corporation ("MC Painting"),

subject to the terms and conditions as set forth in the controlling Subcontract Purchase Order (the

MEI 6840418v.1

"Agreement")(Ex. A), to *inter alia*, clean and paint the South Market Street Bridge as part of a bridge renovation project.

3.      The Agreement required in addition to MC Painting's duty to clean and paint the bridge, that MC Painting would warrant all aspects of its labor and materials for two years. (Ex. A, at 1). This was a requirement of the underlying project bid, as agreed by MC Painting in its submission, and as accepted by Cianbro when selecting MC Painting as the painting subcontractor. (Ex. A, at 1). This warranty included and required a monthly warranty performance inspection regarding MC Painting's workmanship and materials.

4.      As a result of the workmanship and materials warranty which required inspection, the Agreement required MC Painting to "provide Cianbro with a subcontract payment and performance bond for the project..." (Ex. A., at 1), and that regarding the warranty inspection duties "Cianbro will supply labor and equipment to assist in the performance of the inspection services required [only] during the last month of the warranty period." Such terms were substantially material to the Agreement and performance by Cianbro thereunder.

5.      MC Painting breached the Agreement by failing to procure the requisite workmanship and materials warranty performance bond for the project as required by the Agreement's express terms, thereby causing material harm to Cianbro.

6.      As a direct and proximate result of the material breach of MC Painting, Cianbro must incur additional monthly warranty monitoring costs in the amount of $32,247.00 for a period of 24 months which it would not otherwise have had to incur. Such material breach by MC Painting which results in costs to Cianbro materially deprive Cianbro of the benefit of its bargain pursuant to the Agreement.

7

7.     MC Painting over-charged, or otherwise failed to remit to, Cianbro an excess of

$12,974.00 pursuant to the Agreement.   Such material breach by MC Painting which results in

costs to Cianbro materially deprive Cianbro of the benefit of its bargain pursuant to the

Agreement.

8.     MC Painting's material breach of the Agreement relieved Cianbro from all other

obligations and performances under the Agreement.

### COUNT I--Breach of Contract and
### Declaration of Cianbro's Relieved Performance

9.     Cianbro hereby incorporates paragraph 1 through 8 herein as if set forth at length.

10.     The Agreement was valid, existing and enforceable as between Cianbro and MC

Painting.

11.     MC Painting materially breached the Agreement by failing to secure an appropriate

workmanship and material warranty performance bond as required by the Agreement.  Such

requirement was material to the Agreement.

12.     As a direct and proximate result of the material breach of MC Painting, Cianbro must

incur additional monthly warranty monitoring costs in the amount of $32,247.00 for a period of

24 months which it would not otherwise have had to incur.

13.     MC Painting over-charged, or otherwise failed to remit to, Cianbro an excess of

$12,974.00 pursuant to the Agreement.  Such action was material to the Agreement.

14.     As a direct and proximate result of the material breach of MC Painting, such amount has

accrued, is past due and owing from MC Painting to Cianbro in the amount of $12,974.00.

WHEREFORE, Counter-Claim Plaintiff Cianbro prays that this Honorable Court enter

judgment in favor of Cianbro and against Counter-Claim Defendant MC Painting in the amount

of  $45,221.00, plus pre and post judgment interest at the maximum legal rate, to Declare

MEI 6840418v.1

Cianbro's performance as complete pursuant to the Agreement, and award costs, attorneys' fees

and to grant all other relief which the Court deems equitable and just.

Dated:  October 18, 2007.

MCCARTER & ENGLISH, LLP


_____

Christopher A. Selzer (#4305)
McCarter & English, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
**Counsel for Defendant Cianbro Corp.**

9

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF DELAWARE

| | | |
|---|---|---|
| M.C. PAINTING CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 07-283 (GMS) |
| CIANBRO CORPORATION, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TRAVELERS CASUALTY AND | ) | |
| SURETY COMPANY OF AMERICA | ) | |
| | ) | |
| Defendants | ) | |

## DEFENDANT CIANBRO CORPORATION'S INITIAL DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1)

COMES NOW, Cianbro Corporation ("Cianbro"), by and through undersigned counsel pursuant to Federal Rule of Civil Procedure 26(a)(1) with this initial disclosure and states as follows:

**A.     Parties Likely to Have Discoverable Information Concerning Claims and Defenses in this Action:**

Tom Stone
Cianbro Corporation
605 Pittman Road
Baltimore, MD

Mike Hart
Cianbro Corporation
605 Pittman Road
Baltimore, MD

Cianbro reserves the right to update his list.

**B.     The Location of Documents and Records Likely to be of Assistance in the Litigation of all Claims and Counter-Claims:**

Cianbro maintains a file for the South Market Street Bridge project at its offices in Baltimore Maryland. Files and records related to this matter are also maintained in the office of Cianbro's general counsel as well as with its outside counsel, McCarter & English, LLP.

## C.     A Calculation of Damages:

Cianbro's counter-claim alleges damages of at least $45,221.00 calculated as follows:

| | |
|---|---|
| Total monthly monitoring costs through warranty period: | $32,247.00 |
| Cost of Warranty Bond Purchased by Cianbro | $7,545.00 |
| Overcharges by M.C. Painting Corporation and amounts Owed to or Offset by Cianbro | $5,429.00 |

Cianbro asserts that additional potential damages exist to the extent that Cianbro, through the end of the warranty period for which M.C. Painting Corporation was responsible but for which M.C. Painting Corporation failed to secure the appropriate warranty bond for, is required to perform any repair or replacement work to any of M.C. Painting Corporation's work. Cianbro reserves the right to update this calculation.

## D.     Insurance Coverage Relevant to this Matter:

No insurance coverage is relevant to Plaintiffs' claims.

McCARTER & ENGLISH, LLP

/s/ Christopher A. Selzer
Christopher A. Selzer, Esq. (#4305)
405 N. King Street, 8th Floor
Wilmington, DE  19801
(302)-984-6300
(302)-984-6399 facsimile
**Attorney for Defendant
Cianbro Corporation**

Date: January 15, 2008

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF DELAWARE

M.C. PAINTING CORPORATION       )
                                )
         Plaintiff,        )
v.                           )
                                )     Case No. 07-283 (GMS)
CIANBRO CORPORATION,      )
                                )
         and          )
                                )
TRAVELERS CASUALTY AND     )
SURETY COMPANY OF AMERICA   )
                                )
        Defendants     )

## CERTIFICATE OF SERVICE

I, Christopher A. Selzer, hereby certify that on January 15, 2008 a true and correct copy of **Defendant Cianbro Corporation's Initial Disclosures Pursuant To Federal Rule Of Civil Procedure 26(A)(1)** was served via first class mail upon the following counsel:

Robert Daniel Ardizzi, Esq.          Sandra G. M. Selzer, Esq
Davis, Bucco & Ardizzi             Greenberg Traurig, LLP
901 N. Market Street, Suite 700      1007 N. Orange Street, Suite 1200
Wilmington, DE 19801             The Nemours Building
                                    Wilmington, DE 19801

**McCARTER & ENGLISH, LLP**

/s/Christopher A. Selzer
Christopher A. Selzer, Esq. (#4305)
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302)984-6300
(302)984-6399 fax
**Counsel for Defendant Cianbro
Corporation**

Date: January 15, 2008

## Discovery Documents

1:07-cv-00283-GMS M.C. Painting Corporation v. Cianbro Corporation et al

### U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered by Selzer, Christopher on 1/15/2008 at 4:11 PM EST and filed on 1/15/2008

**Case Name:**      M.C. Painting Corporation v. Cianbro Corporation et al

**Case Number:**    1:07-cv-283

**Filer:**           Cianbro Corporation

**Document Number:** 28

**Docket Text:**
INITIAL DISCLOSURES pursuant to Rule 26 by Cianbro Corporation. (Attachments: # (1) Certificate of Service)(Selzer, Christopher)

**1:07-cv-283 Notice has been electronically mailed to:**

Robert Daniel Ardizzi    robert.ardizzi@davisbucco.com

Christopher Alan Selzer    cselzer@mccarter.com, idensmore@mccarter.com

Sandra G. M. Selzer    selzers@gtlaw.com, districtcourtdel@gtlaw.com, thomase@gtlaw.com

**1:07-cv-283 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=1/15/2008] [FileNumber=503160-0]
[0651b1cece21824d8762d0e4957ec487abba4d76e04fefe94c1ca2a9dc33387955bd
66515a9774e23c3c1f5c90853aaa49961ae7114dd18a09b6343bb64226f6]]
**Document description:** Certificate of Service
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=1/15/2008] [FileNumber=503160-1]
[9a885202a87720272ce7f173004866349bc5e59e43e47189bf3d0b9866bf51a0899c
ad6defb4ba0853d6fcf1140e4dc486743ade09e420f2012c77b6cc0e079d]]

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| M.C. PAINTING CORPORTION | §<br>§<br>§ | C.A. No. 1:07-cv-00283-GMS |
| Plaintiff, | §<br>§ | |
| v. | §<br>§<br>§ | |
| CIANBRO CORPORATION, and<br>TRAVELERS CASUALTY AND SURETY<br>COMPANY OF AMERICA, | §<br>§<br>§ | TRIAL BY JURY<br>DEMANDED |
| Defendants. | §<br>§<br>§ | |
| | §<br>§ | |
| CIANBRO CORPORATION, | §<br>§<br>§ | |
| Counter-Claim Plaintiff, | §<br>§<br>§ | TRIAL BY JURY<br>DEMANDED |
| v. | §<br>§ | |
| M.C. PAINTING CORPORATION, | §<br>§<br>§ | |
| Counter-Claim Defendant. | § | |

## ANSWER TO AMENDED COMPLAINT & AMENDED COUNTER-CLAIM OF DEFENDANT
## CIANBRO CORPORATION

COMES NOW, Defendant Cianbro Corporation ("Cianbro"), by and through

undersigned counsel, with this Answer, affirmative defenses and Counterclaim to Plaintiff's

Amended Complaint, and in support thereof states as follows:

*Parties*

1.      Cianbro is without sufficient information to admit or deny the allegations set forth in

paragraph 1 of the Amended Complaint.

2.      Denied. Cianbro is a corporation organized and existing pursuant to the laws of the State

of Maine and that its principle place of business is located in Maine. All other allegations set

forth in paragraph 2 of the Amended Complaint are specifically Denied.

3.      The allegations in paragraph 3 of the Amended Complaint are not directed toward

Cianbro and thus no response from Cianbro is required.

*Venue and Jurisdiction*

4.      Admitted.

5.      Admitted.

*Factual Background*

6.      Admitted.

7.      Admitted in Part. Cianbro admits that it was involved as a contractor for the project

related to the South Market Street Draw Bridge Rehabilitation located in Wilmington. All other

allegations set forth in paragraph 7 of the Amended Complaint are specifically Denied.

8.      Admitted in Part. Cianbro admits that its involvement required it to secure a bond. All

other allegations and/or characterizations of that bond are specifically Denied.

9.      Admitted in Part. Cianbro admits that it secured a bond from defendant Travelers

Casualty and Surety Company of America. All other allegations and/or characterizations of that

bond are specifically Denied.

10.     Denied. By way of further response and without waiving such denial Plaintiffs executed

a Cianbro subcontract purchase order which dictates the terms of Plaintiff's performance and

remedies available to Plaintiff.

11.     Denied.

12.     Denied.

13.    Denied.

14.    Denied.

15.    Denied.

16.    Admitted in Part.  Cianbro admits that Plaintiff has demanded payment from Cianbro.

All other allegations and/or characterizations of paragraph 16 of the Amended Complaint are

specifically Denied.

17.    Denied.

## COUNT I--Breach of Contract
### Plaintiff v. Cianbro

18.    Denied.

19.    Denied.

20.    Denied.

21.    Admitted in Part.  Cianbro admits that Plaintiff has demanded payment form Cianbro and

that Cianbro has denied any obligation to Plaintiff.  All other allegations in paragraph of the

Amended Complaint are specifically Denied.

22.    Denied.

WHEREFORE, Cianbro prays that this Honorable Court enter an order, dismissing with

prejudice, Plaintiff's complaint and award costs, attorneys' fees and grant all other relief as may

be equitable and just.

## COUNT II--Unjust Enrichment
### Plaintiff v. Cianbro

23.    Denied.

24.    Denied.

25.    Denied.

26.    Denied.

27.    Denied.

WHEREFORE, Cianbro prays that this Honorable Court enter an order, dismissing with prejudice, Plaintiff's complaint and award costs, attorneys' fees and grant all other relief as may be equitable and just.

### COUNT III--Claim Against Labor and Materialman's Payment Bond/ Breach of Payment Bond (MCP v. Travelers Casualty and Surety Company of America)

28.    Denied.

29.    The allegations in paragraph 29 of the Amended Complaint are not directed toward Cianbro and thus no response from Cianbro is required.  To the extent that paragraph 29 of the Amended Complaint requires a response by Cianbro, all allegations are specifically Denied.

30.    The allegations in paragraph 30 of the Amended Complaint are not directed toward Cianbro and thus no response from Cianbro is required.  To the extent that paragraph 30 of the Amended Complaint requires a response by Cianbro, all allegations are specifically Denied.

31.    The allegations in paragraph 31 of the Amended Complaint are not directed toward Cianbro and thus no response from Cianbro is required.  To the extent that paragraph 31 of the Amended Complaint requires a response by Cianbro, all allegations are specifically Denied.

32.    The allegations in paragraph 32 of the Amended Complaint are not directed toward Cianbro and thus no response from Cianbro is required.  To the extent that paragraph 32 of the Amended Complaint requires a response by Cianbro, all allegations are specifically Denied.

33.    The allegations in paragraph 33 of the Amended Complaint are not directed toward Cianbro and thus no response from Cianbro is required.  To the extent that paragraph 33 of the Amended Complaint requires a response by Cianbro, all allegations are specifically Denied.

ME1 7140276v.1

WHEREFORE, Cianbro prays that this Honorable Court enter an order, dismissing with prejudice, Plaintiff's complaint and award costs, attorneys' fees and grant all other relief as may be equitable and just.

## AFFIRMATIVE DEFENSES
## OF DEFENDANT CIANBRO

FIRST, affirmative defense.  Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted.

SECOND, affirmative defense.  Plaintiff is in breach of contract by failing to secure the contractually required worksmanship and warranty bond and approaches the Court for relief with unclean hands.

ME1 7140276v.1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| M.C. PAINTING CORPORTION | § | |
| | § | C.A. No. 1:07-cv-00283-GMS |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CIANBRO CORPORATION, and | § | TRIAL BY JURY |
| TRAVELERS CASUALTY AND SURETY | § | DEMANDED |
| COMPANY OF AMERICA, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |
| CIANBRO CORPORATION, | § | |
| | § | |
| Counter-Claim Plaintiff, | § | TRIAL BY JURY |
| | § | DEMANDED |
| v. | § | |
| | § | |
| M.C. PAINTING CORPORATION, | § | |
| | § | |
| Counter-Claim Defendant. | § | |

## AMENDED COUNTER-CLAIM of CIANBRO

1.      Counter-Claim Plaintiff Cianbro Corporation ("Cianbro"), without admission or

contradiction to its Answer to the Amended Complaint, and subject to the qualifications in

Cianbro's Answer thereto adopts for purposes of this Counter-Claim certain of the terms and

facts regarding the existence of an agreement between the parties as set forth in the Amended

Complaint.

2.      Cianbro engaged Counter-Claim Defendant M.C. Painting Corporation ("MC Painting"),

subject to the terms and conditions as set forth in the controlling Subcontract Purchase Order (the

MEI 7140276v.1

"Agreement")(Ex. A), to *inter alia*, clean and paint the South Market Street Bridge as part of a bridge renovation project.

3.       The Agreement required in addition to MC Painting's duty to clean and paint the bridge, that MC Painting would warrant all aspects of its labor and materials for two years. (Ex. A, at 1). This was a requirement of the underlying project bid, as agreed by MC Painting in its submission, and as accepted by Cianbro when selecting MC Painting as the painting subcontractor. (Ex. A, at 1). This warranty included and required a monthly warranty performance inspection regarding MC Painting's workmanship and materials.

4.       As a result of the workmanship and materials warranty which required inspection, the Agreement required MC Painting to "provide Cianbro with a subcontract payment and performance bond for the project..." (Ex. A., at 1), and that regarding the warranty inspection duties "Cianbro will supply labor and equipment to assist in the performance of the inspection services required [only] during the last month of the warranty period." Such terms were substantially material to the Agreement and performance by Cianbro thereunder.

5.       MC Painting breached the Agreement by failing to procure the requisite workmanship and materials warranty performance bond for the project as required by the Agreement's express terms, thereby causing material harm to Cianbro.

6.       As a direct and proximate result of the material breach of MC Painting, Cianbro must incur additional monthly warranty monitoring costs in the amount of $32,247.00 for a period of 24 months which it would not otherwise have had to incur. Such material breach by MC Painting which results in costs to Cianbro materially deprive Cianbro of the benefit of its bargain pursuant to the Agreement.

7.    MC Painting over-charged, or otherwise failed to remit to, Cianbro an excess of

$12,974.00 pursuant to the Agreement.    Such material breach by MC Painting which results in

costs to Cianbro materially deprive Cianbro of the benefit of its bargain pursuant to the

Agreement.

8.    As a direct and proximate result of the material breach of MC Painting, Cianbro was also

required to spend $7,545.00 for a $755,000.00 warranty bond for the benefit of the State of

Delaware to secure warranty obligations not fulfilled by MC Painting as required by the

Agreement. (Ex. B).  Such material breach by MC Painting resulted in costs to Cianbro which

materially deprive Cianbro of the benefit of its bargain pursuant to the Agreement

9.    MC Painting's material breach of the Agreement relieved Cianbro from all other

obligations and performances under the Agreement.

### COUNT I--Breach of Contract and
### Declaration of Cianbro's Relieved Performance

10.    Cianbro hereby incorporates paragraph 1 through 9 herein as if set forth at length.

11.    The Agreement was valid, existing and enforceable as between Cianbro and MC

Painting.

12.    MC Painting materially breached the Agreement by failing to secure an appropriate

workmanship and material warranty performance bond as required by the Agreement.  Such

requirement was material to the Agreement.

13.    As a direct and proximate result of the material breach of MC Painting, Cianbro must

incur additional monthly warranty monitoring costs in the amount of $32,247.00 for a period of

24 months which it would not otherwise have had to incur.

14.    MC Painting over-charged, or otherwise failed to remit to, Cianbro an excess of

$12,974.00 pursuant to the Agreement.  Such action was material to the Agreement.

8

MEI 7140276v.1

<u>15</u>.    As a direct and proximate result of the material breach of MC Painting, such amount has

accrued, is past due and owing from MC Painting to Cianbro in the amount of $12,974.00.

<u>16</u>.    <u>MC Painting failed to procure the necessary warranty bond as required pursuant to the</u>

<u>Agreement.</u>

<u>17</u>.    <u>As a direct and proximate result of MC Painting's procure the warranty bond as required</u>

<u>by the Agreement, Cianbro purchased for $7,545.00, for the benefit of the State of Delaware, the</u>

<u>required warranty bond.</u>

WHEREFORE, Counter-Claim Plaintiff Cianbro prays that this Honorable Court enter

judgment in favor of Cianbro and against Counter-Claim Defendant MC Painting in the amount

of $<u>52,766.00</u>, plus pre and post judgment interest at the maximum legal rate, to Declare

Cianbro's performance as complete pursuant to the Agreement, and award costs, attorneys' fees

and to grant all other relief which the Court deems equitable and just.

Dated: <u>February 14, 2008</u>.


**MCCARTER & ENGLISH, LLP**


Christopher A. Selzer (#4305)
McCarter & English, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
**Counsel for Defendant Cianbro Corp.**

ME1 7140276v.1

# EXHIBIT

# A

# CIANBRO

*THE CONSTRUCTORS • FABRICATION & COATING • DEVELOPMENT • DATA SERVICES*

One Hunnewell Square • P.O. Box 1000
Pittsfield, Maine 04967   (207) 487-3311 • Fax (207) 679-2464

## SUBCONTRACT PURCHASE ORDER

**No. 200400072MAR**

This order number must be shown on all invoices. Invoices in duplication with a Subcontractor's application for Payment to be sent to the project address below.

| Order Date | Buyer |
|---|---|
| 03/12/2004 | KELLIE DUPLISEA |

**IMPORTANT** The attached terms and conditions are hereby incorporated into this order and the Subcontractor expressly acknowledges their acceptance.

**ALL ITEMS OF THIS ORDER SHALL MEET OSHA STANDARDS**

**SUBCONTRACT BETWEEN**
**SUBCONTRACTOR:**
M C PAINTING CORPORATION
1195 HAVERFORD ROAD
CRUM LYNNE PA 19022
ACE NELSON

**AND**
**CONTRACTOR:**
Cianbro Corporation
Hunnewell Square
P.O. Box 1000
Pittsfield, ME 04967

**PROJECT ADDRESS:**
Cianbro Corporation
320 South Market Street
Wilmington DE 19801

RETAINAGE:   5.00%

| PROJECT NAME | CIANBRO CONTACT | PROJECT OWNER |
|---|---|---|
| MARKET STREET BRIDGE REHAB | WILLIAM KLEINFELDER | DELAWARE DEPT OF TRANSPORTATIO |

| PROJECT LOCATION | GENERAL CONTRACT DATE | OWNER'S PROJECT NUMBER |
|---|---|---|
| NEW CASTLE COUNTY, DE | January 6, 2004 | 21-074-07 |

| PROJECT PHONE NUMBER | PROJECT FAX NUMBER | OWNER'S ARCHITECT / ENGINEER |
|---|---|---|
| 410-636-3000 | 410-636-3111 | |

| NO. | QTY. UM | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| | | Provide all labor, materials, tools, safety protection, equipment, supervision, and incidentals thereto, including all applicable taxes, insurances, guarantees, etc, required to complete the following work at the above referenced project in strict accordance with the attachment incorporated herein as well as the General Contract Documents and related documents listed therein, including all addenda. | | |
| | | SCOPE OF WORK: PROVIDE LABOR, MATERIALS, AND EQUIPMENT TO BLAST, CLEAN, AND PAINT THE COMPLETE BRIDGE STRUCTURE INCLUDING THE MACHINERY AND TO DISPOSE OF ANY HAZARDOUS MATERIALS IN ACCORDANCE WITH STANDARD SPECIFICATION SECTIONS 605.35, 605.37, AND 820 AS WELL AS SPECIAL PROVISION SECTIONS 605533 605590, 605629, AND 605680 THAT WERE PREVIOUSLY SUBMITTED, INCLUDING THE TWO YEAR WARRANTY PROVISION. | | |
| | | THE SUBCONTRACTOR WILL PROVIDE CIANBRO WITH A SUBCONTRACT PAYMENT AND PERFORMANCE BOND FOR THE PROJECT. CIANBRO WILL SUPPLY LABOR AND EQUIPMENT TO ASSIST IN THE PERFORMANCE OF THE INSPECTION SERVICES REQUIRED DURING THE LAST MONTH OF THE WARRANTY PERIOD. THE SUBCONTRACTOR AGREES TO PERFORM ALL WARRANTY WORK AND WILL SUPPLY ALL MAINTENANCE OF TRAFFIC, ACCESS, CLEANING AND PAINTING OF ANY AREA THAT REQUIRES TO BE RE-DONE UNDER THE WARRANTY, IN ACCORDANCE WITH SPECIAL PROVISION SECTION 605690, AND ANY/ALL ADDITIONAL COSTS ASSOCIATED WITH THIS SECTION. CIANBRO WILL ISSUE A LETTER OF ACCEPTANCE TO SUBCONTRACTOR IN ORDER TO INITIATE THE WARRANTY PERIOD | | |
| | | THIS SUBCONTRACT DATED APRIL 13, 2004 REPLACES PREVIOUS ORDERS DATED MARCH 1, 2004, AND MARCH 12, 2004 IN ITS ENTIRETY. | | |
| 1 | LS | Cianbro Account: 303009.02080892.S   370,200.00 | | 370,200.00 |

## AGREEMENT ACCEPTANCE:

Subcontractor- Please return the acknowledged copy of this form as your acceptance of this order with noted attachments within 5 days to CIANBRO Purchasing Department, P.O. Box 1000, Pittsfield, ME 04967.

Subcontractor   M.C. Painting Corp.

Signature _____

Title   Vice President

Date   4/20/04

A CIANBRO AUTHORIZED CORPORATE REPRESENTATIVE'S SIGNATURE IS REQUIRED AND CONSIDERED YOUR NOTICE TO PROCEED.

Cianbro Corporation

Signature   Brian B. Rogers

Title _____

Date   4-22-04

**Acknowledgement**

# CIANBRO

*THE CONSTRUCTORS • FABRICATION & COATING • DEVELOPMENT • DATA SERVICES*

### SUBCONTRACT PURCHASE ORDER

**No.** 200400072MAR

This order number must be shown on all invoices. Invoices in duplication with a Subcontractor's application for Payment to be sent to the project address below.

One Hunnewell Square • P.O. Box 1000
Pittsfield, Maine 04967    (207) 487-3311 • Fax (207) 679-2464

| Order Date | Buyer |
|---|---|
| 03/12/2004 | KELLIE DUPLISEA |

**IMPORTANT:**
Continued....
ALL ITEMS OF THIS ORDER SHALL MEET OSHA STANDARDS

**SUBCONTRACT BETWEEN**
**SUBCONTRACTOR:**

M C PAINTING CORPORATION
1195 HAVERFORD ROAD
CRUM LYNNE PA 19022
ACE NELSON

| PROJECT NAME | CIANBRO CONTACT | PROJECT OWNER |
|---|---|---|
| MARKET STREET BRIDGE REHAB | WILLIAM KLEINFELDER | DELAWARE DEPT OF TRANSPORTATIO |
| **PROJECT LOCATION** | **GENERAL CONTRACT DATE** | **OWNER'S PROJECT NUMBER** |
| NEW CASTLE COUNTY, DE | January 6, 2004 | 21-074-07 |
| **PROJECT PHONE NUMBER** | **PROJECT FAX NUMBER** | **OWNER'S ARCHITECT / ENGINEER** |
| 410-536-3000 | 410-536-3111 | |

| NO. | QTY. UM | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| 2 | LS | Cianbro Account: 303009.09970980.S    159,025.00 | | 159,025.00 |

Prior to additional cost being incurred, the Subcontractor must notify the Cianbro Project Superintendent in writing and receive written approval from same in order to receive payment for any additional cost.

This work will be coordinated with the Cianbro Project Superintendent and will be performed between March 2004 and March 2005.

A Certificate of Insurance issued in accordance with the Insurance Requirements attached hereto as well as Worker's Compensation, specifically listing the State the project is located in, is required to be on file at Cianbro prior to the start of work and the execution of this agreement. It is a requirement of this subcontract that Cianbro and the Project Owner be named as Additional Insureds under all of the Subcontractor's liability policies.

This Subcontract Purchase Order executed by both parties and a valid Certificate of Insurance must be on file at Cianbro's Corporate Purchasing before payment will be made to Subcontractor.

The following attachments are considered an integral part of this order:

1) Standard Subcontract Attachment (PU705)
   (12 Pages)
2) Special Conditions    4-13-04
3) Subcontractor's Quote dated 3/26/04 as amended dated 4/6/04 ◄———
4) OFCCP Letter (Copy enclosed for your files)
5) Pertinent Contract Documents
6) Standard Specification Sections 605.35, 605.37, and 820
7) Special Provision Sections 605633 and 605590, AND 605590
8) Schedule of Payments
9) Subcontractor's Proposal Breakdown
10) Subcontractor's Fax Cover Sheet dated 4/6/04 as amended

## AGREEMENT/ACCEPTANCE:

Subcontractor- Please return the acknowledged copy of this form as your acceptance of this order with noted attachments within 5 days to CIANBRO Purchasing Department, P.O. Box 1000, Pittsfield, ME 04967.

A CIANBRO AUTHORIZED CORPORATE REPRESENTATIVE'S SIGNATURE IS REQUIRED AND CONSIDERED YOUR NOTICE TO PROCEED.

Subcontractor    *M.C. Painting Corp.*

Signature

Title    *Vice President*

Date    *4/20/04*

Cianbro Corporation

Signature

Title

Date    *4-23-04*

### Acknowledgement

# CIANBRO

THE CONSTRUCTORS • FABRICATION & COATING • DEVELOPMENT • DATA SERVICES

One Hunnewell Square • P.O. Box 1000
Pittsfield, Maine 04967    (207) 487-3311 • Fax (207) 679-2464

**SUBCONTRACT
PURCHASE ORDER**

**No.** 200400072MAR

This order number must be shown on all invoices. Invoices in duplication with a Subcontractor's application for Payment to be sent to the project address below.

| Order Date | Buyer |
|---|---|
| 03/12/2004 | KELLIE DUPLISEA |

IMPORTANT:
    Continued....
ALL ITEMS OF THIS ORDER SHALL MEET OSHA STANDARDS

**SUBCONTRACT BETWEEN**
**SUBCONTRACTOR:**
M C PAINTING CORPORATION
1195 HAVERFORD ROAD
CRUM LYNNE PA 19022
ACE NELSON

| PROJECT NAME | CIANBRO CONTACT | PROJECT OWNER |
|---|---|---|
| MARKET STREET BRIDGE REHAB | WILLIAM KLEINFELDER | DELAWARE DEPT OF TRANSPORTATIO |
| PROJECT LOCATION | GENERAL CONTRACT DATE | OWNER'S PROJECT NUMBER |
| NEW CASTLE COUNTY, DE | January 6, 2004 | 21-074-07 |
| PROJECT PHONE NUMBER | PROJECT FAX NUMBER | OWNER'S ARCHITECT / ENGINEER |
| 410-636-3000 | 410-636-3111 | |

| NO. | QTY. | UM | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|---|---|
| | | | ***** END ***** | | |
| | | | TOTAL AMOUNT THIS ORDER | | 529,225.00 |

**AGREEMENT ACCEPTANCE:**
Subcontractor- Please return the acknowledged copy of this form as your acceptance of this order with noted attachments within 5 days to CIANBRO Purchasing Department, P.O. Box 1000, Pittsfield, ME 04967.

Subcontractor
MC Painting Corp.

Signature

Title    Vice President

Date    4-20-04

A CIANBRO AUTHORIZED CORPORATE REPRESENTATIVE'S SIGNATURE IS REQUIRED AND CONSIDERED YOUR NOTICE TO PROCEED.

Cianbro Corporation

Signature

Title

Date    4-23-04

**Acknowledgement**

# CIANBRO    STANDARD SUBCONTRACT AGREEMENT
# TERMS AND CONDITIONS

## 1. DEFINITIONS

SUBCONTRACT AGREEMENT OR CONTRACT means the document entitled "Subcontract Purchase Order" signed by the parties hereto and bearing form, these Subcontract Terms and Conditions bearing form number PU705, and any other documents incorporated by reference.

GENERAL CONTRACT means all contract documents comprising the agreement between the Contractor (or one of its affiliated or subsidiary corporations) and the Owner identified in the section of this Subcontract Agreement entitled "Owner."

PROJECT means the work, which is the object of the General Contract and which, is described in the section of the Subcontract Agreement entitled "Project."

CONTRACTOR means the contractor described in the section of the Subcontract Agreement entitled "Contractor."

## 2. PAYMENT

The Contractor shall pay the Subcontractor for the satisfactory completion of its obligations hereunder the amount or amounts stated in the section entitled "Compensation to be Paid Subcontractor," subject to additions and/or deductions for changes in the work as may be agreed upon in writing. This sum includes, and will include, all taxes imposed by Federal, State, or Municipal Governments, including all State and Federal unemployment and old age benefit taxes, which shall become due or payable arising out of the employment by the Subcontractor of all employees in the performance of work under this subcontract. As a condition precedent to the receipt of the final payment and/or retained percentage, if any, by the Subcontractor, the Subcontractor shall show evidence to the Contractor that all payments for such taxes have been made.

The Contractor shall compensate the Subcontractor in installments as follows:

Payments shall be made monthly for the proportion of the contract sum mentioned above properly allocable to the work put in place through the last day of the preceding month, as determined by the Owner, less the percent retained and less the aggregate of previous payments, within seven days after the receipt of said payment by the Contractor from the Owner, provided all other provisions of this subcontract are being fulfilled by the Subcontractor. The Subcontractor shall be paid no more than the Contractor is paid by the Owner for that particular division of work, or portion thereof, being done by the Subcontractor. Notwithstanding the foregoing, it is agreed that if the Contractor is not paid by the Owner in accordance with the terms of the General Contract because the Contractor has failed to perform some condition of the General Contract, which such failure is not in any respect attributable to any default of the Subcontractor, the Contractor shall nevertheless pay the Subcontractor within seven days of the date that payment would have otherwise been received from the Owner. Payments hereunder shall be subject to the following conditions precedent:

(A) All applications for progress payments shall be made on forms furnished by the Contractor;

(B) The Subcontractor shall furnish, at the request of the Contractor, all forms of affidavits, certificates, and such other data as may be required by the Contractor in order to fully comply with the requirements of the Owner;

(C) The Subcontractor shall execute and deliver General Release and Affidavits, lien waivers, and/or waiver of claims in such form as directed by the Contractor before final payment shall be made;

(D) The Subcontractor shall execute and deliver, upon demand, evidence, including lien waivers and/or waiver of claims, satisfactory to the Contractor that no unpaid claims exist against the Subcontractor for labor, materials, insurance, sales tax, or other obligations incurred by the Subcontractor in the performance of the Work. Such evidence shall be provided upon request during the course of the performance of the work, and in any event, shall be provided prior to the release of final payment and/or retention.

Any retainage specified will be paid to the Subcontractor within sixty days after acceptance of the Subcontractor's work by the Owner, Architect, and Contractor unless otherwise provided in the General Contract. The Contractor may withhold such payments, as it may deem necessary to guarantee the satisfactory performance of or compliance with any provisions of this subcontract. No progress payment shall be conclusive, and all payments shall be subject to adjustment and/or correction in the final payment. No payment shall be construed to be an acceptance of any work nor shall payment prejudice any of the rights granted to the Contractor for this subcontract.

## 3. SCOPE OF WORK

The Subcontractor agrees to furnish all labor, materials, tools, equipment, testing, inspection, scaffolding, safety appliances, hoists, lights, required licenses, supervision, engineering, and any other miscellaneous items necessary to perform all of the work described in the section of the Subcontract Agreement entitled "Work to be Done by the Subcontractor" as well as any work not shown or specified but which may reasonably be implied to be within the scope of the Subcontractor's work for the Project being carried out by the Contractor for the Owner, all in a good workmanlike manner and in strict accordance with the General Contract.

Except as modified by the subcontract, Subcontractor agrees to adhere to and be bound to the Contractor by all of the provisions of the General Contract and to the contract documents affecting Subcontractor's work hereunder, and, insofar as its work is concerned, to assume towards the Contractor all of the duties, obligations and liabilities that the Contractor assumes toward the Owner. With regard to any requirements of the General Contract for submission of written notices within specified time periods, it is agreed that Subcontractor will submit such notices to the Contractor promptly enough to enable the Contractor to submit them to the Owner or Architect within such specified time periods.

The terms and conditions expressly set forth in this subcontract are in addition to the provisions of the General Contract. In the event of a conflict between the terms of this subcontract and the General Contract, the provisions of this subcontract shall govern.

## 4. SUBCONTRACTOR REPRESENTATIONS

Subcontractor represents and warrants that it has, prior to entering into this subcontract, carefully examined and fully understands all contract documents, physically inspected the premises, fully investigated the type and nature of work to be performed by it and all of the conditions (both natural and artificial) and circumstances surrounding, or in any way affecting, such work. Further, Subcontractor represents that it enters into this subcontract solely on

the basis of such examination, inspection, and investigation and upon its asserted knowledge and experience in performing the work described herein and not because of, nor in reliance upon, any representation or opinion rendered by either the Contractor or the Owner or any of their representatives, officers, employees, or agents.

## 5. PROGRESS OF WORK
Subcontractor agrees to commence its work hereunder without delay when progress on the project has reached the point where Subcontractor's work can commence. In any event, the Subcontractor shall commence work within 10 days of notice to commence given by the Contractor. The Subcontractor's work shall be carried on promptly, with dispatch, and coordinated with other work on the project to the satisfaction of the Contractor. The Contractor shall have the right to order that certain parts of the work be commenced in preference to others, and the Subcontractor agrees that it shall not be entitled to any additional compensation as the result of such change in sequence.

## 6. TIME; DELAYS
Time is of the essence of this subcontract. Subcontractor shall be liable to the Contractor for any damages, liquidated or otherwise, caused by the Subcontractor's delay of the work hereunder, including the Contractor's damages and any liability of the Contractor to Owner, other Subcontractors, or any other person involved in the project. Should the Subcontractor be only partially liable for such damages due to his/her operations hereunder, the Subcontractor shall pay the Contractor his/her pro-rata share of such damages.

Subcontractor agrees that it will at all times furnish adequate and competent labor, services, materials, equipment, tools, and supervision so that its performance hereof may be carried out without delay. In the event Subcontractor is delayed by unforeseeable causes that are beyond the control and without the fault of the Subcontractor, including causes that are within the control or the fault of the Contractor, the Subcontractor shall be entitled to an equitable adjustment in its schedule. The Subcontractor acknowledges and agrees that such a time extension shall be the exclusive remedy for such a delay.

## 7. LABOR DISPUTES
In the performance of its obligations under this subcontract, the Subcontractor shall employ only such labor as performs its services to the satisfaction of the Contractor and in continuing harmony with other trades or employees employed at the project. In the event of an actual or threatened dispute by or on behalf of labor employed on the work by the Contractor or any Subcontractor due to the employment of a person or persons by the Subcontractor or the presence of the Subcontractor on the project, the Subcontractor shall forthwith make such arrangements as may be necessary in the opinion of the Contractor to prevent strikes, work stoppages, delays, or expense to the Contractor or discontinue the employment of any employee whose presence or conduct may be unsatisfactory to the Contractor or whose continued presence on the project is, in the opinion of the Contractor, undesirable in the interest of the prompt and proper execution of this subcontract, the General Contract, or any other Subcontractor's contract. Should the Subcontractor fail to carry out this provision, the Contractor may proceed in the same manner as provided in Paragraph 13 after 24 hours written notice.

## 8. BONDS
If requested, the Subcontractor shall provide the Contractor with a payment and performance bond to secure payment and performance of its obligations hereunder, in the amount of the full subcontract price as set forth in the Subcontract Agreement. If requested, such bond shall be provided within seven days of the execution of this subcontract. Said bond shall be issued by a bonding

company authorized to write payment and performance bonds in the state where the project is located. Said bond shall name the Contractor as the sole obligee thereof and shall be irrevocable without the written consent of the Contractor. Unless otherwise provided in this subcontract, the premium for said bond shall be paid by the Contractor.

## 9. WAGES AND SUBCONTRACTOR DEBTS
The Subcontractor agrees to pay its employees, suppliers, and intermediate Subcontractors, unemployment compensation taxes as required by the state in which the work is being carried on, federal and state income taxes withheld from employees, social security taxes, local taxes, and any other charges levied on the Subcontractor by any local, state, or federal governmental agency, and others to whom it may be indebted within the length of time stipulated in their contract. The Subcontractor agrees further to pay wages and benefits as required by any federal wage determinations and state wage rate determinations. The Subcontractor shall indemnify and hold harmless the Contractor and the Owner from any costs, expenses, or damages arising out of, or in connection with, the assertion of any claim or lien by any individual or organization to which the Subcontractor is indebted or which was retained directly or indirectly by the Subcontractor for the supply of labor, materials, or services used in the performance of the Subcontractor's obligations hereunder. The Subcontractor agrees to furnish, at any time during the progress of the work or upon completion thereof, satisfactory proof of compliance with the requirements of this Article. In the event of an actual or threatened mechanics lien or claim against the project or against the Contractor on account of the Subcontractor's failure to pay any of its debts, the Contractor shall have the right to make payments directly to such claiming creditors or to the Subcontractor and the claiming creditor, jointly. Any such payments made by the Contractor shall be deducted from sums otherwise due the Subcontractor. Alternately, the Contractor shall have the right to retain out of any money then due, or to become due, the Subcontractor an amount sufficient to completely indemnify the Contractor against such lien or claim as well as legal and other related costs. And in the event that the Subcontractor shall have been fully paid all sums due it, there shall be immediately due and payable from the Subcontractor to the Contractor an amount equal to payments made by the Contractor to discharge the lien or claim and the related costs incurred.

## 10. CONDITION OF WORK AREA
The Subcontractor shall keep all areas used by him/her clean at all times during the course of the project and shall remove from the premises all debris and surplus material resulting from its work and shall dispose of the materials as directed by the Contractor. In the event the Subcontractor fails to keep such areas clean or to remove such materials, the Contractor, after giving Subcontractor 24 hours written notice, may perform this work and the Subcontractor shall reimburse the Contractor for all expenses incidental thereto.

## 11. ASSIGNMENT
This subcontract shall not be assigned, sublet, or transferred by the Subcontractor, in whole or in part, without the Contractor's written consent. Any purported assignment, subcontract, or transfer without the Contractor's written consent shall be void and of no effect. It is further agreed that the Subcontractor shall not assign any monies due or to become due under this subcontract without the written consent of the Contractor.

## 12. TERMINATION
The Contractor shall have the right at any time, by written notice to the Subcontractor, to terminate this

(PU705)
Rev. 10/09/02
Page 3 of 12

subcontract without cause and at the Contractor's discretion. In such case, provided the Subcontractor be not then in default, the Contractor shall pay the Subcontractor a pro-rata portion of the price set forth in the Subcontractor Agreement based upon the percentage of Subcontractor's work hereunder which has been completed as of the effective date of termination, except that Subcontractor shall not be entitled to anticipated profits on work unperformed or on materials or equipment unfurnished. Notwithstanding the above, the Subcontractor agrees that in the event the Owner terminates the General Contract, or any portion of it, the Subcontractor expressly waives its right to claim compensation beyond the amount recovered by the Contractor from the Owner for the portion of the work being carried out by the Subcontractor.

**13. DEFAULT** Should Subcontractor, at any time, fail in the performance of its obligations under this subcontract, or if it should make a general assignment for the benefit of its creditors, or if a receiver shall be appointed for it in any court, or should a petition in Bankruptcy or for reorganization be filed by or against it, under any of the provisions of the Bankruptcy Code of the United States of America, then the Contractor shall have the right to either:

(A) Supply such number of men/women and quantity of material as the Contractor deems advisable for the completion of such work, and charge the costs thereof, together with all other reasonable expenses, to the Subcontractor; or

(B) Terminate this Agreement and the Subcontractor shall be entitled to no monies of any kind, but shall nevertheless remain liable for any damage the Contractor has suffered; or

(C) Relet the work called for under this subcontract to any other persons, corporations, or entities by one or more contracts, in addition to any labor or materials furnished by the Contractor, and the actual contract prices plus the cost of such labor and material furnished by the Contractor, plus reasonable expenses and overhead of the Contractor, and its attorneys fees, shall be charged against the Subcontractor, but this shall not relieve the Subcontractor from the obligation to pay any additional damages or loss that the Contractor may have suffered.

In either of the foregoing events, the Contractor shall have the right to take possession of all tools, equipment, material, appliances, and supplies, belonging to the Subcontractor on the premises for use in carrying out the provisions of this paragraph.

**14. MERGER OF REPRESENTATIONS AND NEGOTIATIONS; ENTIRE AGREEMENT** All negotiations, proposals, acknowledgments, and agreements made prior to the date of this subcontract, including, without limitation, any disclaimers or limits on liability, are merged herein and superseded hereby. Any acknowledgment of the terms of this subcontract by Subcontractor containing additional terms or terms differing from those contained herein shall be null, void, and of no effect, and the performance of any work described herein by the Subcontractor shall constitute a waiver of such additional or different terms. This subcontract constitutes the sole and entire agreement between the parties hereto. No representations or other agreements with the Subcontractor have been made by the Contractor except as stated in this subcontract. Except as otherwise provided herein, this subcontract may not be changed in any way except by written agreement signed by both parties. No term or condition of this subcontract may be waived by the Contractor except in writing signed by its duly authorized officer or agent.

**15. INSURANCE** The Subcontractor agrees to maintain during the life of this subcontract insurance as follows:

Worker's Compensation Insurance as required by the laws of the state in which work is to be performed; Comprehensive General Liability Insurance and Comprehensive Automobile Insurance in the amounts not less than those indicated in this Subcontract Agreement; coverage shall also be provided for Completed Operations (or Products) Liability and Contractual Liability Insurance specifically including this subcontract.

The explosion, collapse, and underground excavation exclusion, commonly known as the "XCU Exclusion" shall be eliminated, and coverage for these perils shall be provided. Coverage shall include the broad form property damage endorsement.

The Subcontractor agrees to provide the Contractor with a Certificate of Insurance reflecting the coverage described above. Said certificate shall be provided within five days of execution of this subcontract and shall state that the Contractor shall be given 15 days written notice in the event of cancellation or modification of any of the coverage.

The Subcontractor will, in the event of any subletting of the obligation hereunder, see to it that its sublessor carries such insurance.

**16. INDEMNIFICATION** To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, the Architect or Engineer, and the Contractor and all of their agents and employees from and against all claims, damages, losses, and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Subcontractor's work under this subcontract, provided that any such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property including the loss of use resulting therefrom, to the extent caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by him/her or any one for whose acts s/he may be liable, regardless of whether it is caused in part by a party indemnified hereunder. Amongst other things, this indemnification shall constitute a waiver by the Subcontractor of any immunity from claims, contribution, or indemnification granted by law to the Subcontractor under applicable worker's compensation laws.

The Subcontractor further agrees to indemnify the Contractor against and hold the Contractor harmless from any and all claims, losses, damages, and expenses (including attorney's fees) which the Contractor may pay or be compelled to pay in settlement of any claims hereunder, including without limitation, claims under the provisions of any worker's compensation laws, claims under the mechanics lien laws, and claims of third parties.

**17. WAIVER** For any claims made against Subcontractor which are determined to be caused in whole or in part by the negligent act, error or omission of the Subcontractor, the Subcontractor waives any right which may accrue to it to claim indemnity and/or contribution from the Contractor, the Owner, the Architect or Engineer, for or on account of any and all loss, cost, damage, expense, and liability which may be incurred by the Subcontractor by reason of injury to or death of persons whomsoever, including the Subcontractor's employees and the Contractor's employees, or damage to or destruction of property whatsoever. This waiver is limited to the portion or percentage of the claim that Subcontractor is determined to be liable for and Subcontractor reserves its rights to claim indemnification or contribution from any party which is determined to be partially liable. Subcontractor does not accept and will not assume sole and exclusive liability for claims made against it that are caused in whole or in part by the acts or omissions of others but shall assume liability for its portion only. This waiver applies to all

(PU705)
Rev. 10/09/02
Page 4 of 12

claims for indemnity, contribution, reimbursement, and protection of any nature whatsoever, regardless of the source or basis upon which the Subcontractor's loss, cost, damage, expense, and/or liability is founded, including, but not limited to, circumstances under which the Subcontractor is merely secondarily liable, passively negligent, liable only by operation or implication of fact, or otherwise remotely or indirectly liable. It is the intention of the parties to this Contract that the Subcontractor shall assume the exclusive responsibility for protecting itself against such claims by obtaining insurance.

Although the Contractor owes certain contractual duties to the Owner for certain general and specific safety measures, the Contractor does not assume the responsibility for the exercise of safety precautions, which may be necessary or appropriate in connection with the work being performed by the Subcontractor. Subcontractor shall be responsible for all safety precautions, which may be necessary or appropriate in connection with the performance of its work.

## 18. CHANGES
Any additions or deductions from the work hereunder shall be dealt with in accordance with the terms of the General Contract, except as the parties in writing mutually agree otherwise. The Subcontractor will render bills for any additional work ordered, in writing by the Contractor, at such time and on such forms as directed by the Contractor.

The Subcontractor shall not be entitled to receive any extra compensation of any kind whatsoever, regardless of whether the work was ordered by the Contractor or any of its representatives, unless such extra work order is given in writing and signed by an officer, or project manager, of the Contractor. The parties hereto agree that no oral modification of this agreement shall have any force or effect.

## 19. UNSATISFACTORY WORK
The subcontractor agrees that any labor and material which, in the opinion of those in authority under the General Contract, is unsatisfactory, whether such opinion is expressed orally or in writing, shall, immediately upon notice from the Contractor to the Subcontractor, be removed and replaced by the Subcontractor at its own expense with satisfactory labor and material, and the question of whether or not such opinion is or is not proper, is not to be considered. Any provisions in this Agreement to the contrary notwithstanding, the Contractor shall not be liable to Subcontractor for any delay caused by the Contractor or by the Owner, or by any of the Contractor's other Subcontractors or for any other cause whatsoever.

## 20a. GUARANTEE
The Subcontractor agrees to guarantee its work against all defects of materials and/or workmanship and to repair or replace any broken, defective, malfunctioning, or unsatisfactory items to the full and complete satisfaction of the Contractor, the Owner, and the Architect or Engineer. Such guarantee shall extend for the period specified in the General Contract and shall date from the time of final acceptance of the Contractor's work by the Owner. The Subcontractor also agrees to guarantee, for the benefit of the Owner and the Contractor, its work and equipment to the full extent the Contractor is required to guarantee or warrant such work to the Owner under the General Contract. If no guarantee is specified in the General Contract, the guarantee shall extend for a period of one year from the date of final acceptance of the Contractor's work by the Owner. The Subcontractor agrees to execute any special guarantees provided for its work under the General Contract. The Subcontractor shall also assume all liability of the Contractor to the Owner or other third parties for warranties imposed by applicable law with respect to work done or equipment supplied under this subcontract. The

Subcontractor further agrees that said guarantee shall not be limited or abridged in any way by the terms and conditions of the Subcontractor's agreements with its suppliers and lower tier subcontractors. Nor shall said guarantee constitute an exclusive remedy or preclude the Contractor from exercising any other remedy available in equity or law.

## 20b. GUARANTEE (YEAR 2000 WARRANTY).
Subcontractor represents and warrants to Contractor and Owner the following with respect to all goods, products, equipment, services and software provided to Contractor under this Agreement (collectively referred to herein as "Deliverables"): (i) the operation of such Deliverables at all times on and after January 1, 2000 shall be no different from their operation prior to such date; and (ii) such Deliverables will be able to process, store, identify, manipulate, record and present data containing, referring to or relying on dates in 1999, 2000 and thereafter in the same manner as data containing, referring to or relying on dates prior to such years. Subcontractor further warrants that to the extent its internal systems impact its relationship with Contractor, such systems shall also comply with the foregoing warranties. Upon request by Contractor, Subcontractor agrees to (a) provide written certification of the foregoing warranties to Contractor and Owner, and (b) allow Contractor to verify compliance with such warranties. Subcontractor shall indemnify and hold harmless Contractor and Owner from and against any and all claims, damages, losses and expenses, including without limitation attorneys' fees, arising out of or relating to any breach by Subcontractor of the foregoing representations and warranties.

## 21. ARBITRATION
(A) It is expressly agreed that if the terms of the General Contract obligate the Contractor to arbitrate disputes with the Owner, the Subcontractor, at the election and upon the demand of the Contractor, agrees to participate, as a party with the Owner and the Contractor in any arbitration where any aspect of the Subcontractor's performance, its rights or liability for work performed or its right to payment under this subcontract is in issue. The procedures provided in the General Contract shall govern the conduct of such arbitration and the selection of arbitrators. In the absence of such procedures, the matter shall be decided in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. This agreement to arbitrate shall be specifically enforceable under the prevailing law. The award rendered by the arbitrators shall be final, and judgment may be entered upon the award by any court having jurisdiction thereof.

(B) With respect to any disputes between the Contractor and the Subcontractor arising under this subcontract, the Subcontractor agrees that the Contractor, at its sole option and its sole discretion, may elect to submit such disputes to arbitration in which such event all claims between the parties hereunder shall be subject to arbitration. Such election shall be evidenced by the filing of a demand for arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association and such arbitration shall then be conducted in accordance with such rules. This agreement to arbitrate shall be specifically enforceable under the prevailing law. The award rendered shall be final and judgment may be entered upon the award by any court having jurisdiction thereof.

## 22. MISCELLANEOUS COVENANT
(A) The Subcontractor shall give his/her personal supervision to the work or have a competent foreman or superintendent, satisfactory to the Contractor, on the work at all times during progress, with full authority to act for Subcontractor. The Contractor may remove any

employee of the Subcontractor, which it considers unsatisfactory. The Subcontractor agrees to cooperate fully with the Contractor, the Contractor's Project Superintendent, and all other Subcontractors that the Contractor might employ on the project.

(B) Subcontractor shall comply fully with the Federal Occupational Safety and Health Act of 1970 as amended. Levies for noncompliance shall be borne by the Subcontractor. The Subcontractor also agrees to comply fully with all local, state, and federal ordinances, regulations, and laws; all safety and work regulations instituted by the Contractor for this particular project; and to report all accidents to the Contractor's Project Superintendent. In the hiring, promotion, transfer, and discharge of employees, the Subcontractor agrees not to discriminate against or in favor of any person because of race, color, creed, national origin, sex, age, religion, marital status, disability, and Vietnam Era or disabled veteran status. If applicable to this project and to this Contract the Subcontractor agrees to comply with all requirements of Executive Order No.'s 11246 and 13201 all rules, regulations, and orders issued thereunder or pursuant thereto, and to furnish Contractor with all required reports, information, and data needed by the Contractor to comply with the reporting requirements of said Executive Order. The Subcontractor shall provide safe working conditions for its employees and for all others on the project whose duties necessarily require them to be in, on, or about the area where the Subcontractor is working. All employees of the Subcontractor shall wear hard-hats, safety glasses, and proper footwear approved by the Contractor. Anyone found in violation of any of these provisions may be removed from the project by the Contractor's Project Superintendent. The obligations of the Subcontractor as to safety as required by this Article are additional and supplementary to the other safety precautions which may be necessary or appropriate in connection with the performance of the Subcontractor's work and for which safety precautions the Subcontractor is responsible.

Without limiting or narrowing the Subcontractor's exclusive responsibilities and liabilities for safety in the workplace, the Subcontractor agrees that the Contractor shall have the right, but not the responsibility, to issue directives to the Subcontractor to change or correct conditions, conduct, practices, or methods caused or employed by the Subcontractor which, in the sole judgment of the Contractor, are or could cause or create a hazardous condition or violation of applicable safety requirements in the workplace. The Subcontractor agrees to make no claim, and hereby waives any right to make a claim for any increased costs or delays, which he believes, are or will be caused by the issuance of such directives. The parties further agree that in no event shall the foregoing two sentences be considered or deemed an assumption by the Contractor of the Subcontractor's sole liability for noncompliance with applicable safety requirements and safe working conditions.

(C) The Subcontractor shall furnish its own storage and office facilities and shall not enter or use the Contractor's facilities without first securing permission of the Contractor's Project Superintendent. However, the Subcontractor shall not erect or place on the project any storage or office facilities or any signs without the approval of the Contractor.

(D) The Subcontractor agrees to assume all expense in connection with all required cutting and patching, with progress and final cleanup of its debris and removal of same from the project, and with engineering services required in the layout of its work, and to assume responsibility for accuracy of same. Should the Subcontractor fail, refuse, or neglect to cleanup its debris and to remove same from the project or deposit same in a designated area, if any there may be, and to maintain its work and storage areas in a neat and orderly condition, and should such failure, refusal, or neglect continue for more than 24 hours after written notice, the Contractor may proceed with such cleanup work itself and deduct the costs incurred thereby

from sums otherwise due the Subcontractor. Said written notice may be given by mail addressed to the last known address of the Subcontractor, postage prepaid, or by field memorandum from the Contractor's Project Superintendent to the Subcontractor's on-site representative.

(E) All of the terms and conditions of this subcontract shall be construed according to the laws of the State of Maine unless otherwise specified in the General Contract.

(F) The Subcontractor will be answerable and accountable for violation of any letters patent or patent rights, or any infringement thereof by the Subcontractor, or by reason of the use by the Subcontractor of any art, machine, or composition of matter for this subcontract in violation of any patent or patent rights or infringement thereof, against all of which the Subcontractor must properly guard and indemnify the Contractor from the same in the manner provided in Article 16 hereof.

(G) Within the number of days specified in the subcontract, the Subcontractor shall furnish the Contractor with all necessary details, shop drawings, specification sheets, catalogs, test reports, samples, and schedules pertaining to items included in the Subcontractor's work. These submittals shall be in the quantity, form, and manner prescribed by the Contractor. Approvals shall be only as to type and/or design, and the Subcontractor shall remain responsible for quantities, dimensions, and coordination with the actual project conditions as they exist, and compliance with all conditions of this Contract. Approval by the Architect or Engineer and Contractor of drawings and other submittals shall not be construed as authority to depart from or modify the plans or specifications unless the Subcontractor accompanies its submittals with a letter pointing out and describing the proposed changes or modifications, and unless such changes or modifications are specifically approved in writing by the Architect or Engineer or Contractor.

(H) All of the work covered hereunder is subject to the approval of the Contractor, the Owner, and the Architect or Engineer named in this Contract, and any work not so approved shall be removed and replaced by the Subcontractor at its own expense. The Subcontractor shall also be responsible for costs incurred to repair or replace any work put in place by the Contractor or any other Subcontractor and damaged while repairing or replacing the Subcontractor's disapproved work. The Contractor may withhold payments from the Subcontractor until such time as the work of the Subcontractor meets the approval of the above parties or proceed in the manner set out in Article 13 hereof if the Subcontractor fails, refuses, or neglects to repair or replace defective or disapproved work.

(I) Claims for extra or altered work, changes, modifications, changed conditions, subsurface conditions, or obstruction at the site, any act of God, the elements, delays, equitable adjustments, and damages resulting from requirements, acts, or omissions of the Owner or any third party, or from any cause beyond the control of the Contractor, shall be governed by the provisions of the General Contract and the Contractor shall make payments to the Subcontractor on account of such claims only to the extent that the Contractor is paid therefor by the Owner. If the General Contractor authorizes an appeal from the act or decision of the Owner denying any such claim and the time for such appeal has not expired, the Contractor, upon written request of the Subcontractor, shall at its option either prosecute an appeal on behalf of the Subcontractor under said contract provision or permit the Subcontractor to prosecute an appeal in the name of the Contractor, either to be at the Subcontractor's sole expense.

(J) A waiver by the Contractor of any of the above terms and conditions shall not be deemed a waiver of any of the other terms and conditions. None of the remedies provided by the Contractor by this subcontract are intended to be exclusive, and the Contractor

expressly reserves the right to exercise any other remedies provided by law.

(K) Each and every provision of law and clause required by law to be inserted in this subcontract shall be deemed to be inserted herein, and the subcontract shall be read and enforced as though it were included herein and, if through mistake or otherwise, any such provision is not inserted, or if not correctly inserted, then upon the application of either party, the subcontract shall forthwith be physically amended to make such insertion.

(L) If this subcontract is being awarded to a Subcontractor upon the basis that it qualifies under federal and state laws as: (i) a Women's Business Enterprise, or (ii) a Disadvantaged Business Enterprise, or (iii) a minority, women owned, or economically disadvantaged firm as these terms may be defined from time to time under applicable law, it is agreed that it is a condition precedent to the Contractor's obligation hereunder that the Subcontractor continuously maintain its status as such a business or firm throughout the life of this Agreement. If the Subcontractor's status as such a firm or enterprise is terminated at any time by any governmental authority having jurisdiction over the matter, or if Subcontractor hires or subcontracts a portion of its work such that any portion of its overall contract value is performed by entities that do not qualify under (i), (ii), or (iii) above, the Contractor shall have the right and option to terminate this subcontract immediately in accordance with the provision in Article 12 hereof.

# SAFETY REQUIREMENTS

Providing a safe work environment - injury free- for all personnel is the subcontractor's number one priority and responsibility. The following Safety requirements are mandatory for all personnel on this Project. They are not intended to be all inclusive and may need to be supplemented to meet specific project conditions, additional Owner requirements or as agreed to in Cianbro pre-award/pre-construction meetings.

The Subcontractor agrees in the performance of this contract to understand, comply with and enforce the following requirements:

## 1. APPLICABLE SAFETY RULES All applicable
Federal, State, Local or other regulatory agency safety rules including but not limited to the Occupational Safety and Health Act of 1970 and amendments and all applicable Environmental, Hazardous Materials and Waste Management Regulations.

## 2. MINIMUM REQUIREMENTS Cianbro established
minimum requirements:

  (A) ANSI approved hard hats with bill forward.
  (B) ANSI approved Safety Eye Glasses with hard fixed sideshields (for routine work activities); Double Eye Protection (goggles or glasses with face shield) is required when using power tools.
  (C) Hard toe leather safety footwear with a minimum of 6" ankle foot support. No sneakers or sandals will be allowed.
  (D) Unprotected sides or edges of walking/working areas six (6) feet or more above a lower level shall have conventional employee protection from falling by the use of guardrail, safety net or personal fall arrest systems. Cianbro requires use of full body harness with two shock absorbing lanyards as part of a fall arrest system. Refer to Cianbro's Fall Prevention Bulletin.
  (E) New Employee Orientations and Weekly Safety Meetings shall be conducted and documented specific to hazard exposure in each phase of work. A copy of all sign-off sheets with topic outline for these meetings shall be provided to Cianbro weekly.
  (F) Observe and comply with the Cianbro Project Safety Plan in effect. Subcontractors are required to develop their own Project Safety Plan that promotes awareness of specific hazards and solutions among its employees, which may be subject to review and acceptance by the contractor.
  (G) Approved lockout procedures shall be used and coordinated with all affected parties whenever employees could be harmed by an accidental system or equipment start-up.
  (H) All electrical tools will be grounded or double insulated. All temporary or permanent electrical work is to be performed by licensed electricians. Each subcontractor shall have a written electrical program outlining their specific procedure for GFCI or assured grounding.
  (I) Only trained, competent or licensed personnel will operate or service equipment. Equipment will be operated in accordance with manufacturer's recommendations.
  (J) All incidents and injuries shall be immediately reported to the Cianbro Superintendent and the Subcontractor Project Supervisor and a written report completed with a copy to Cianbro.
  (K) Work areas shall be maintained clean and orderly at all times. Good housekeeping is essential on this Project.
  (L) The use, possession or sale of alcohol or regulated drugs is prohibited. Violators will be removed from the Project.
  (M) Prior to each demobilization, the required OSHA 200 log shall be provided to the Cianbro Project Superintendent and forwarded to the Corporate Purchasing Department.
  (N) A Subcontractor Supervisor shall be designated as the Safety Supervisor for all Subcontractor work - prior to the start of contract work. The Subcontractor Safety Representative will

coordinate/communicate regularly (at least weekly) with Cianbro's Safety Representative and review safety at the project.

## 3. ACTIVITY SUSPENSION Cianbro Site
Managers/Supervisors shall have the authority to suspend any activity being conducted, which could endanger the safety and health of any person until that unsafe or hazardous condition is corrected by the Subcontractor.

## 4. VIOLATION OF REQUIREMENTS Violation of
these requirements may result in termination of the Subcontract Agreement.

# HAZARDOUS SUBSTANCE REGULATIONS

## 1. HAZARDOUS MATERIAL AND WASTE MANAGEMENT PROGRAM Management Program is
available to all Contractor and Subcontractor employees for review. The purpose of this program is to promote the safety and health of all individuals and to make each person aware of the hazardous materials that s/he may come in contact with, the nature of the hazard, and how to take the proper precautions while dealing with these materials. Prior to starting any task, all Subcontractor employees must be informed of the chemical hazards associated with the project operations and of the protective measures that can be taken while performing on-site work. Cianbro's Project Supervisor assigned to the Subcontractor will be responsible for coordinating and documenting the flow of hazard information between the Facilities Hazardous Materials Coordinator (herein after referred to as FHMC) and the Subcontractor. The FHMC is responsible for passing on the hazards and of the protective measures to be taken. The FHMC is also responsible for passing on the hazard information received from the Subcontractor to the appropriate departments.

## 2. SUBCONTRACTOR'S RESPONSIBILITIES
This contract between Cianbro and the Subcontractor hereby makes the following requirements of the Subcontractor:

  (A)   Any and all materials delivered to the project site to be used in the work described in this Subcontract must be accompanied by the Manufacturer's Material Safety Data Sheet. This requirement is applicable on those materials that are required by law to have a Material Safety Data Sheet available to the recipients of such materials. Material Safety Data Sheets are required for materials that are toxic or hazardous substances as defined by federal, state, or local laws. Manufacturers and Subcontractors are legally obligated to provide these documents. The Subcontractor's request for payments of such materials will be paid only upon receipt of these documents at the project because the materials are incorporated into. The Subcontractor must obtain the necessary Material Safety Data Sheets from Cianbro for the materials supplied by Cianbro to be used in this work.
  (B)  The Subcontractor must train his/her people as required in the "Right to Know" laws for handling hazardous materials and document the completion of their worker training program prior to project initiation.
  (C)  The Subcontractor must inform Cianbro employees of the hazards introduced by the Subcontractor's operations.
  (D)  The Subcontractor must comply with all federal, state, and local rules and regulations governing the proper handling and disposal of all hazardous wastes and shall be responsible for the

proper disposal of any and all wastes, hazardous or otherwise, generated by his/her work on this project.

(E) The Subcontractor must submit to Cianbro copies of all manifests issued as a result of this work prior to removing any wastes from the project. The Project Owner shall be named as the Generator on all manifests unless otherwise specified by Cianbro.

# INSURANCE REQUIREMENTS

Before the Subcontractor, Consultant, or Supplier PERFORMS ANY WORK under the contract, it shall furnish or have previously furnished Cianbro with Certificates of Insurance documenting that insurance has been provided to meet the minimum requirements set forth below.

## 1. WORKER' COMPENSATION Statutory
Requirements for the specific state in which the work will be performed, including (where applicable) coverage under the Federal Long Shoremen's and Harbor Workers Act, Jones Act, or similar employee benefit acts as required by law.
And Employer's Liability — $500,000

## 2. COMPREHENSIVE AUTO LIABILITY
Owned, Non-Owned, and Hired including coverage for bodily injury and property damage.  Split Limits — $500,000 each person; Bodily Injury — $1,000,000 each person; Property Damage — $500,000 each occurrence; or Combined Single Limit B.I. & P.D. $1,000,000

## 3. COMPREHENSIVE GENERAL LIABILITY
Bodily Injury & Property Damage; Combined — $2,000,000 aggregate. Coverage shall include: • Contractual Liability Coverage; • Broad Form Property Damage; • Products and Completed Operations; • Explosion, Collapse & Underground Hazards; • Independent Contractor/Contractor's Protective; and Personal Injury

## 4. COMMERCIAL GENERAL LIABILITY

| | |
|---|---|
| General Aggregate | $2,000,000 |
| Products—Completed Operations | $2,000,000 |
| Personal & Advertising Injury | $1,000,000 |
| Each Occurrence | $1,000,000 |
| Fire Damage | $ 50,000 |
| Medical Expense | $5,000 |

Coverage shall include:
• Coverage provided on a Per Occurrence Basis;
• Contractual Liability Coverage; and
• No exclusion endorsements

## 5. PROFESSIONAL LIABILITY If it is applicable to the work under the contract, provide Professional Liability Insurance (i.e. Engineers, Architects, Surveyors) Errors and Omissions Coverage, with a combined single limit of $2,000,000.

## 6. ITEMS TO INCLUDE The following items must be included as part of the policies described above and shall be so evidenced on the Certificate of Insurance:
(A) Cianbro Corporation and the Project Owner (as well as any other parties named in the General Contract) shall be named as Additional Insureds under all liability insurance policies, which shall include a cross-liability and severability of interests clause. Each such liability policy shall be endorsed to provide a waiver of any and all of each insurer's rights of subrogation against the Contractor, Owner, and their corporate affiliates, officers, employees, and agents.

(B) The insurance provided shall include a "Per Project General Aggregate Endorsement" for the specific project as stated in the agreement between Cianbro Corporation and the Subcontractor, Consultant, or Supplier.
(C) Certificates of Insurance evidencing insurance coverages shall state that no material change or cancellation can be effective without thirty (30) days written notice to Cianbro Corporation at P. O. Box 1000, Pittsfield, Maine  04967.
(D) Insurance coverage provided by the Subcontractor, Consultant, or Supplier to Cianbro shall be, and shall be endorsed to confirm that it is, primary insurance and shall not be reduced by the amount of any other insurance maintained by the Project Owner or Cianbro insuring the same risks.

## 7. ADDITIONAL REQUIREMENTS The following requirements shall be a part of any agreement between Cianbro Corporation and the Subcontractors, Consultants, and Suppliers working for Cianbro Corporation.
(A) Contractor's Protective Liability shall cover all Subcontractor's vendors and sub-subcontractors.
(B) Products and Completed Operations Liability including Broad Form Property Damage coverage which shall be maintained for two years after final acceptance of the work.
(C) In the event any work under a Subcontract is performed by a sub-subcontractor, the Subcontractor shall require all of its sub-subcontractors to procure and maintain similar coverage as required by this Attachment in an amount equal to the requirements of the Subcontract.
(D) The provisions of the various insurance policies are subject to Cianbro's approval.

# APPARATUS SUPPLIED BY CIANBRO

## 1. DEFINITIONS
OTHER PERSONS refers to Subcontractor or any of its sub-subcontractors or any of the employees or agents of any of them.
APPARATUS refers to any ladder, scaffolding, staging, platform, or similar device, which has been furnished by Cianbro on a temporary basis for use in the performance of work.

## 2. APPARATUS SUPPLIED It is the intention of the parties hereto that the Subcontractor and its sub-subcontractors should enjoy the benefits, economical and otherwise, that arise from the use by other persons of apparatus furnished by Cianbro provided that the Subcontractor assumes all risk of personal injury and death which are incident to such use by such other persons. In recognition of Subcontractor's assumption of such risk, Subcontractor shall first inspect any apparatus and satisfy itself that the apparatus is appropriate and sufficient for the Subcontractor's purposes.

## 3. INDEMNIFIED PARTIES In furtherance of the foregoing intentions and notwithstanding anything contained elsewhere in this Subcontract, the Subcontractor agrees that it will, to the fullest extent permitted by law, defend, indemnify and save harmless the Owner, the Architect or Engineer, and Cianbro and all of their agents and employees (indemnified parties) from and against any and all claims, demands, losses, damages, costs, liabilities, and expenses (including without limitation, attorneys fees, and investigative costs) arising out of or resulting from any injury and/or

death of any persons caused by or resulting from, in whole or in part, the use, misuse, or failure of apparatus, regardless of whether or not it is caused in whole or in part by one or more of the indemnified parties; provided that this obligation to defend, indemnify, and save harmless shall not apply to the extent that an injury and/or death is directly caused by willful misconduct of one or more of the indemnified parties. Amongst other things, this indemnification shall constitute a waiver by the Subcontractor of any immunity from claims, contribution, or indemnification granted by law to the Subcontractor under applicable Worker's Compensation laws.

ATTACHMENT #2                                                    PAGE 1
SUBCONTRACT PURCHASE ORDER 200400072 MAR
M C PAINTING CORPORATION

### SPECIAL CONDITIONS

1.    The General Contract documents for Bridge No. 688 - South Market Street Bridge
      Rehabilitation located in New Castle County, Delaware, are made up of the following
      documents. All materials supplied by the Subcontractor / Vendor for this project must
      conform in strict accordance with these documents as well as all of the attachments
      referenced in this Agreement.

      Special Provision for Contract No. 21-074-07,
        Federal Aid Project No. EBHN-N029(2), Bridge No. 688
      State of Delaware Standard Specifications Highway & Bridges dated August 2001
      Drawing Sheets 1 through 169 Dated April 1, 2003
      Addendum 1 dated October 16, 2003
      Addendum 2 dated October 22, 2003

2.    Cianbro's Subcontractor Safety Requirements (Attachment #2) must be complied with by the
      Subcontractor at all times on the project site. Additional safety requirements may be necessitated
      by this project and will be included in the Cianbro Project Safety Plan, a copy of which will be
      available at the project site. The Subcontractor shall familiarize himself with these requirements
      and abide by them. While working on the project, the Subcontractor and his employees are
      required to attend Cianbro's safety meetings. Failure by the Subcontractor to cooperate with the
      Project Safety Superintendent and to comply with these requirements may result in termination
      of this contract.

3.a.  Submittals of pertinent application drawings and information, material certifications, source of
      supply, Material Safety Data Sheets, methods of installation, test results, samples of materials,
      and product literature shall be the responsibility of the Subcontractor. Five copies shall be sent to Cianbro's Project
      Superintendent for review prior to submission to the Owner. Submittals shall be provided
      sufficiently in advance to allow for review and approval by the Owner, so as not to delay
      production and delivery of materials. Submittals are considered an integral part of this
      Subcontract and payment will not be made for any work or materials until the proper submittals
      have been received and approved by Cianbro and the Owner.

3.b.  At the time of each submission, the Subcontractor shall call to the Owner's attention, in writing,
      any deviations that the Shop Drawings or any submittals may have from the requirements of the
      contract documents.

4.    All Material Safety Data Sheets for hazardous materials or wastes used or generated by the
      Subcontractor must be submitted to Cianbro prior to bringing the materials on site. The sources

                                    CIANBRO

ATTACHMENT #2                                                    PAGE 2
SUBCONTRACT PURCHASE ORDER 200400072 MAR
M C PAINTING CORPORATION

## SPECIAL CONDITIONS

of supply and Certificates of Compliance must be submitted to and approved by the Owner prior to use.

5.     Deliveries of materials to be used in this work shall be coordinated with the Cianbro Project Superintendent or his designee. A minimum 24-hour notice must be provided to the Cianbro Project Superintendent prior to all deliveries. Any change in scheduled delivery dates must be coordinated with the Cianbro Project Superintendent. Delivery and installation schedules are extremely critical to the completion of this project and must be coordinated with Cianbro.

6.     The Subcontractor shall obtain and pay for any special local permits required for this work including permits for disposal of wastes. Copies shall be provided to Cianbro upon request.

7.     The Subcontractor shall be responsible for the clean-up and legal disposal of excess and non-salvageable as well as any and all waste materials (including hazardous wastes) generated by his work on the project. In the areas, which must be returned to public use, all debris must be cleaned up and disposed of before the end of each workday. The Subcontractor shall also maintain access for Cianbro and other subcontractors at all time.

8.     The Subcontractor shall repair or replace, as determined by the Owner's Engineer, any defective work or materials provided by or damaged as a result of the Subcontractor's operations. The Subcontractor shall also be responsible for any damage to public or private property caused by the Subcontractor's operations, which are not to be replaced as part of the General Contract.

9.     This Subcontract is contingent upon its approval by the Owner.

10.    All future correspondence regarding this contract must be forwarded through the Cianbro project office.

11.    At the project site, Cianbro will provide sanitary facilities for the Subcontractor. Other temporary facilities (including water) required by the Subcontractor must be provided by the Subcontractor and approved by the Cianbro Project Superintendent prior to set-up.

12.a.  SUBCONTRACTOR'S AFFIDAVIT: Subcontractor shall prepare, execute and deliver to Cianbro a sworn contractor's affidavit accurately listing all parties furnishing labor or materials to Subcontractor and giving the name, address, description of work and how much, if any, is due or will be due each. Such affidavit will be furnished by Subcontractor prior to commencement of the Subcontract work.

## CIANBRO

ATTACHMENT #2                                          PAGE 3
SUBCONTRACT PURCHASE ORDER 200400072 MAR
M C PAINTING CORPORATION

<u>SPECIAL CONDITIONS</u>

12.b.  PARTIAL AND FINAL WAIVERS: Subcontractor shall execute and submit copies of the
(MECHANIC'S) Lien Waiver form, to the extent of each payment of the Subcontract Price
requested, and also shall submit sworn statements and waivers of mechanic's lien executed by
each supplier of labor or materials to Subcontractor, to the extent of each payment requested,
together with all other necessary documents, all as required to waive all claims for mechanics
liens relating to work for which payment is then being requested. The delivery of such sworn
statements, waivers and other documents shall be a condition precedent to Subcontractor's right
to receive such payment. When final payment of the Subcontract Price is requested,
Subcontractor shall furnish Cianbro with its full (MECHANIC'S) Lien Waiver form from each
supplier of labor or materials to Subcontractor, a contractor's affidavit setting forth that all labor,
material and equipment used in connection with or incorporated in or about the Subcontract
Work is fully paid for and such other documents as may be required to fully and finally waive
and release all mechanic's liens and claims for lien relating to the Subcontract Work.

13.    In the event the work of the Subcontractor is expected to be delayed as a result of severe
picketing or any similar activity at the Subcontractor's entrance to the job site, the Subcontractor
agrees to make every reasonable effort to continue the work. However, and at Cianbro's request,
the Subcontractor agrees to provide adequate supervisory personnel, material, and equipment to
continue the work. Cianbro will provide the required labor (subject to the approval of the
Subcontractor), and the costs will be deducted from the Subcontractor's monthly pay estimate. If
the parties cannot agree on a fair and reasonable adjustment to the Subcontract, or if the Owner
does not allow this arrangement for the Subcontract, Article 12 of the Standard Terms &
Conditions (Attachment #1) may be enforced by Cianbro.

14.    The Subcontractor shall coordinate his work activities with Cianbro, other subcontractors, and
utilities affected by his work. Existing utilities not relocated shall be protected as necessary. The
Subcontractor is encouraged to attend weekly scheduling meetings to keep informed of the
progress schedule in order to better coordinate his work. Location of existing utilities is the
responsibility of the Subcontractor.

15.    The Subcontractor shall perform these work activities with the highest regard to safety and
protection of pedestrian and vehicular traffic. Cianbro reserves the right to provide adequate
protection if the Subcontractor fails to do so and to deduct the costs from the Subcontract
Amount.

16.    Subcontractor agrees to furnish to the Contractor prior to the start of their work a copy of their
written Health and Safety Program, which complies with OSHA and other Governing Agencies.

# CIANBRO

ATTACHMENT #2                                          PAGE 4
SUBCONTRACT PURCHASE ORDER 200400072 MAR
M C PAINTING CORPORATION

### SPECIAL CONDITIONS

17. Effective January 1, 2003 the use of tobacco is not permitted in any Cianbro owned or occupied buildings, grounds, adjacent grounds, and parking lots, or inside vehicles that are situated on Cianbro provided parking facilities. Violators will be removed from the project.

18. Drawing No. 33 of 169 shall apply to the work in this order.

CIANBRO

# EXHIBIT B

**SAFECO INSURANCE COMPANY OF AMERICA**

### WARRANTY BOND

Bond No. 6427782                                    Amount: $755,000.00

### KNOW ALL MEN BY THESE PRESENTS,

That we, **CIANBRO CORPORATION** (hereinafter called the Principal), as Principal, and the **SAFECO INSURANCE COMPANY OF AMERICA** of Seattle, Washington, a corporation duly organized under the laws of the State of Washington (hereinafter called the Surety), as Surety, are held and firmly bound unto the **State of Delaware, Department of Transportation, 800 Bay Road, PO Box 778, Dover, Delaware 19903** (hereinafter called the Obligee), in the sum of ***Seven Hundred Fifty-Five Thousand and No/100Ths*** ($755,000.00) for the payment of which, we, the said Principal and the said Surety, bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

Sealed with our seals and dated this 27th day of November, 2006.

WHEREAS, the said Principal has heretofore entered into a contract with **State of Delaware** dated **December 22, 2003** to guarantee for the **Preparation, Cleaning, Bridge Painting and Maintenance of Traffic in Association with the South Market Street Bridge Project, Dover, Delaware.**

NOW THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the Principal shall faithfully carry out and perform the said guarantee, and shall, on due notice, repair and make good at its own expense any and all defects in materials or workmanship in the said work which may develop during the **Second (2) Year after the completion of the project commencing October 16, 2007 and ending October 16, 2008,** or shall pay over, make good and reimburse to the said Obligee all loss and damage which said Obligee may sustain by reason of failure or default of said Principal so to do, then this obligation shall be null and void; otherwise shall remain in full force and effect.

CIANBRO CORPORATION

By: _____

SAFECO INSURANCE COMPANY OF AMERICA

By: _____
Joline L. Binette (Attorney-in-Fact)



**POWER
OF ATTORNEY**

Safeco Insurance Companies
PO Box 34526
Seattle, WA 98124-1526

No. __9244__

KNOW ALL BY THESE PRESENTS:

That SAFECO INSURANCE COMPANY OF AMERICA and GENERAL INSURANCE COMPANY OF AMERICA, each a Washington corporation, does each hereby appoint

*****DEBORAH DUNLAP AVASTHI; JOLINE L. BINETTE; MICHELLE V. ORLANDO; NANCY E. PETERS; DERON K. TREADWELL; MICHAEL A. VINER; SHANNON S. WALTON; Auburn, Maine*************************************************************************************************

its true and lawful attorney(s)-in-fact, with full authority to execute on its behalf fidelity and surety bonds or undertakings and other documents of a similar character issued in the course of its business, and to bind the respective company thereby.

IN WITNESS WHEREOF, SAFECO INSURANCE COMPANY OF AMERICA and GENERAL INSURANCE COMPANY OF AMERICA have each executed and attested these presents

this __19th__ day of __July__ , __2005__

*Stephanie Daley-Watson*

STEPHANIE DALEY-WATSON, SECRETARY

*[signature]*

MIKE PETERS, PRESIDENT, SURETY

**CERTIFICATE**

Extract from the By-Laws of SAFECO INSURANCE COMPANY OF AMERICA
and of GENERAL INSURANCE COMPANY OF AMERICA:

"Article V, Section 13. - FIDELITY AND SURETY BONDS ... the President, any Vice President, the Secretary, and any Assistant Vice President appointed for that purpose by the officer in charge of surety operations, shall each have authority to appoint individuals as attorneys-in-fact or under other appropriate titles with authority to execute on behalf of the company fidelity and surety bonds and other documents of similar character issued by the company in the course of its business... On any instrument making or evidencing such appointment, the signatures may be affixed by facsimile. On any instrument conferring such authority or on any bond or undertaking of the company, the seal, or a facsimile thereof, may be impressed or affixed or in any other manner reproduced; provided, however, that the seal shall not be necessary to the validity of any such instrument or undertaking."

Extract from a Resolution of the Board of Directors of SAFECO INSURANCE COMPANY OF AMERICA
and of GENERAL INSURANCE COMPANY OF AMERICA adopted July 28, 1970.

"On any certificate executed by the Secretary or an assistant secretary of the Company setting out,
   (i)  The provisions of Article V, Section 13 of the By-Laws, and
   (ii)  A copy of the power-of-attorney appointment, executed pursuant thereto, and
   (iii)  Certifying that said power-of-attorney appointment is in full force and effect,
the signature of the certifying officer may be by facsimile, and the seal of the Company may be a facsimile thereof."

I, Stephanie Daley-Watson, Secretary of SAFECO INSURANCE COMPANY OF AMERICA and of GENERAL INSURANCE COMPANY OF AMERICA, do hereby certify that the foregoing extracts of the By-Laws and of a Resolution of the Board of Directors of these corporations, and of a Power of Attorney issued pursuant thereto, are true and correct, and that both the By-Laws, the Resolution and the Power of Attorney are still in full force and effect.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the facsimile seal of said corporation

this __27th__ day of __November__ , __2006__

For Attachment To Warranty Bond No. 6427782

 

*Stephanie Daley-Watson*

STEPHANIE DALEY-WATSON, SECRETARY

S-0974/DS 4/05

Safeco and the Safeco logo are registered trademarks of Safeco Corporation.

WEB PDF

## Hilb Rogal & Hobbs

31 Court Street * P.O. Box 40 * Auburn, ME 04212-0040

——— I N V O I C E ———

Cianbro Corporation
Hunnewell Square
P.O. Box 1000
Pittsfield, ME   04967

Named Insured: Cianbro Corporation

| | |
|---|---|
| Invoice Date | 01/09/07 |
| Invoice No. | 221432 |
| Bill-To Code | CIANCOR |
| Client Code | CIANCOR |
| Inv Order No. | 1*200105 |

Amount Remitted: $

Please return this portion with your payment.

Make checks payable to: Hilb Rogal & Hobbs

| Effective Date | Policy Period | Coverage Description | Transaction Amount |
|---|---|---|---|
| 10/16/06 | 10/16/06 to 10/16/07 | Safeco Insurance Company Policy No. 6427782 New - Miscellaneous Bonds | 7,545.00 |
| | | $755,000 Warranty Bond in Favor of State of Delaware Dept. of Transportation South Market Street Bridge Project. Dover Delaware We Thank You For Your Business! | |
| | | Invoice Number: 221432         Amount Due: | 7,545.00 |

303009. 01360915. M
        ₄/11
            6L

Premiums Due and Payable on Effective Date

RFH    Page: 1              ORIGINAL INVOICE

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF DELAWARE

| | | |
|---|---|---|
| M.C. PAINTING CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 07-283 (GMS) |
| CIANBRO CORPORATION, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TRAVELERS CASUALTY AND | ) | |
| SURETY COMPANY OF AMERICA | ) | |
| | ) | |
| Defendants | ) | |

## DEFENDANT CIANBRO CORPORATION'S **AMENDED** DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1)

COMES NOW, Cianbro Corporation ("Cianbro"), by and through undersigned counsel pursuant to Federal Rule of Civil Procedure 26(a)(1) with this initial disclosure and states as follows:

**A.    Parties Likely to Have Discoverable Information Concerning Claims and Defenses in this Action:**

Tom Stone
Cianbro Corporation
605 Pittman Road
Baltimore, MD

Mike Hart
Cianbro Corporation
605 Pittman Road
Baltimore, MD

Cianbro reserves the right to update his list.

**B.    The Location of Documents and Records Likely to be of Assistance in the Litigation of all Claims and Counter-Claims:**

ME1 7052094v.1

Cianbro maintains a file for the South Market Street Bridge project at its offices in Baltimore Maryland. Files and records related to this matter are also maintained in the office of Cianbro's general counsel as well as with its outside counsel, McCarter & English, LLP.

**C.    A Calculation of Damages:**

Cianbro's counter-claim alleges damages of at least $52,766.00 calculated as follows:

| | |
|---|---|
| Total monthly monitoring costs through warranty period: | $32,247.00 |
| Cost of Warranty Bond Purchased by Cianbro | $7,545.00 |
| Overcharges by M.C. Painting Corporation and amounts Owed to or Offset by Cianbro | $12,974.00 |

Cianbro asserts that additional potential damages exist to the extent that Cianbro, through the end of the warranty period for which M.C. Painting Corporation was responsible but for which M.C. Painting Corporation failed to secure the appropriate warranty bond for, is required to perform any repair or replacement work to any of M.C. Painting Corporation's work.

**D.    Insurance Coverage Relevant to this Matter:**

No insurance coverage is relevant to Plaintiffs' claims.

McCARTER & ENGLISH, LLP

/s/ Christopher A. Selzer
Christopher A. Selzer, Esq. (#4305)
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302)-984-6300
(302)-984-6399 facsimile
**Attorney for Defendant**
**Cianbro Corporation**

Date: January 15, 2008

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| M.C. PAINTING CORPORTION | § | |
| | § | C.A. No. 1:07-cv-00283-GMS |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CIANBRO CORPORATION, and | § | TRIAL BY JURY |
| TRAVELERS CASUALTY AND SURETY | § | DEMANDED |
| COMPANY OF AMERICA, | § | |
| | § | |
| Defendants. | § | |
| ———————————————————————— | § | |
| | § | |
| CIANBRO CORPORATION, | § | |
| | § | |
| Counter-Claim Plaintiff, | § | TRIAL BY JURY |
| | § | DEMANDED |
| v. | § | |
| | § | |
| M.C. PAINTING CORPORATION, | § | |
| | § | |
| Counter-Claim Defendant. | § | |

## PROPOSED ORDER

HAVING CONSIDERED, this _____ day of _____, 2008, Cianbro Corporation's Motion to File an Amended Counter-Claim and to File Amended Initial Disclosures (the "Motion"), the proposed Amended Counter-Claim of Cianbro and the proposed Amended Initial Disclosure, the Motion is hereby GRANTED, and the Clerk is directed to enter upon the Docket Cianbro's Amended Counter-Claim and Amended Initial Disclosure.

IT IS SO ORDERED.

_____

The Honorable Gregory M. Sleet

4

## CERTIFICATE OF SERVICE

I, Christopher Selzer, hereby certify that on February 14, 2008, I electronically filed the

foregoing **MOTION TO FILE AN AMENDED COUNTERCLAIM AND TO FILE**

**AMENDED INITIAL DISCLOSURES** with the Clerk of the Court, and caused service of the

same upon counsel of record via the CM/ECF system.


By:      /s/ Christopher Selzer
        Christopher Selzer, Esq. (#4305)

ME1 7141231v.1